Thank you. May it please the Court. Good morning, Judges. We're here this morning on an appeal from a grant of summary judgment by Judge Aiken with the District Court against Nestani, which is an owner of an association of condominium owners out in Gresham. The Judge's order was based on three reasons, and, Your Honors, I believe the District Court erred for all three reasons. I'm going to go down briefly, outlining what I'm about to talk about, and then I will go into more detail after I detail what I think the reasons are for the three reasons that the District Court erred in increasing summary judgment. Cut to the chase. What's your best reason? Number one, I think there are two errors the trial court made that really go to the same error, and that would be how Oregon courts and how the District Court, applying Oregon law, should have interpreted the policy. Number one, Your Honor, would be the interpretation of sudden. And under black-letter law, under the McCormick and Baxter case, which was in the briefs, sudden can have two meanings. And the McCormick and Baxter case took those two meanings from the dictionary, and there are numerous other cases throughout the country. You have two problems. You have the suddenness problem, and you have the pinpointing the loss within the policy period, which is not a very long time. And they're sort of offsetting problems, right? If the thing collapses, so the walls come down, everybody sees them, then you not only have a clearly a sudden collapse, but you also have a pinpoint in time where you can sort of say this will happen. People take pictures. I agree with that, Your Honor. So, you know, the more you sort of say this is not sudden means unexpected, it doesn't mean all at once, the more you have a problem with pinpointing it to the policy period, which is what, two years? It's a one-year policy period, January 1, 2006 to January 1, 2007. OK, so it's one year. Yes. So that's the problem. I don't see what evidence you have that it happened within the policy period. Let me address, and first of all, I'll agree with you, there's a certain tension there. And that is in other kinds of collapses, and in other, frankly, other kinds of collapse provisions. And you saw from the briefs that this certain kind of provision, as outlined in the Sexton case, State Farm was making this provision in reaction to cases like Richardson and Schrae, which found that there was a collapse when there was only substantial impairment to the structural integrity of a building. In that, with that background in mind, you take a look at what sudden would have to mean here. And sudden, in the context of something like the weight of snow or the weight of people, would, as you suggest, happen all at once. And there's an easily pinpointable point in time. Here, one of the causes of collapse is hidden decay, which by its very nature happens over a long course of time. And I think, Your Honor, that the district court got that turned on its head when it suggested that- But you can have a decay happening over a long period of time, and then there's a collapse as a result of the decay. So you have termites, or I guess in this case it was wetness, rot, building for a long time. And then there's a point when there's a collapse, right? Yes, Your Honor. And I think the district court correctly- It doesn't mean that the collapse takes a long time. It just means that the precursor, the stuff, the events leading up to it take a long time. I think that's true, that the hidden decay would take a long time, and that the district court correctly decided what I think is a threshold issue that answers your question. And that is, each year there was a separate period of commencing damages. But how are you going to prove this at trial? I mean, this is the thing that concerned me, because we need to say, was there a genuine issue of material fact about collapses that occurred during the policy period? And even the best expert for your side, which was the defense's expert, I didn't quite understand that, but he said, well, probably something happened. I mean, how do you get damages for probably- how do you prove a collapse when all you've got is a probably? Let me point you to two places in the record, Your Honor, I think gets you as well as an insured in this position can get, because by their very nature, these are hidden decay damages. Well, then that assumes that hidden decay damages are covered by the policy or collapses. I mean, it seems like the burden would be on you to say, it is a collapse. And when did it happen, and what was it? Under the particular kind of provision here, the collapse means a very specific thing. It means fallen down or fallen into pieces. And I'll point you to- A part of the building. A part of the building or any part of the building, yes, Your Honor. And so there are two places in the record on ER 7 to 4 and 5, which, as you mentioned, is the testimony by Mr. Perot, who was State Farm- I'm sorry, that was ER what? ER 7, pages 4 to 5. Okay. And that's, as you suggest, Judge, that's testimony by Mr. Perot. And what he says is that the damages were at all locations and worsened progressively since the 1990s, that it was a continual process through the 90s all the way through the present day. Mr. Rose, plaintiff's expert, testified similarly that there were continuous and systematic damages. That's at ER 6, page 2. But couldn't say what any particular damages had happened during any particular year. That's true, Your Honor. And I admit that there is a difficulty in proof here, because these are hidden damages. No, there will be no eyewitness to say that this is a time when, with a weight of snow, perhaps, caused everything to collapse. In this case, I think the dam- there is at least competent summary judgment evidence weighed in favor of the inference against the non-moving party to say that there were systematic damages throughout the complex, and that is what Mr. Rose's report says. I think maybe your better argument would have been, from the way you're arguing it, that the coverage is illusory, because you could never prove it. But putting that aside, I want to get back to your first question about the definition of a sudden. You said that the district court erred in accepting, I guess, the dictionary definition, right? District court said sudden means abrupt, something like that, but- There are two definitions. One dictionary definition is- Let me finish. I'm sorry. I think that's where the district court went. I think your position is sudden really means nothing other than unexpected, something like that. Yes, Your Honor. But there is evidence in the record that was expected in the sense that a lot of unit owners and the association officers knew, you know, for many years previously, and, you know, through the years, that decay was going on, right? They did, Your Honor. Yeah, so how can it be, you know, hidden and unexpected? Because there were two different kinds of decay. This decay, Your Honor, was happening behind the exterior walls of the building. And when you go look at the building, and that's supported by the declarations of Mr. Cholby and Ms. Steiger, presenting at least a genuine material fact, what both of them testified was that at each instance of the decay or the water intrusion problems, as State Farm points out, the associate did level best to find those damages and repair them. And until November 2006, when these damages were decayed, were found behind the building, behind the stucco cladding. They had no idea those damages were there. So there were leaking problems. But those were all followed up. And according to the affidavits by these two folks that were members of the board, they didn't know about this particular kind of damage until it was discovered in November 2006. Your Honor, if I may, I'd like to reserve two minutes for rebuttal. Okay. Thank you. We'll hear from the other side. Thank you, Your Honors. Brian Hickman for State Farm Fire and Casualty Company. We've presented seven separate reasons why this Court could affirm the district court's opinion. I'd like to focus on three, although I'm prepared to answer questions on any of them. The first reason why affirmance is appropriate is that there's no evidence of an entire collapse of a part of a building. Well, how do you define a part of the building? Because opposing counsel says, well, if any portion of a structural member falls to the ground, that's enough to trigger the coverage. Why isn't that right? Well, first of all, I think that Judge Aiken at the district court explained it very well. When you read the part of a building in conjunction with entire in particular, if you say that a portion of a structural member is a part of a building and the crumbling of that entire collapse of a part of a building, it just doesn't make sense. When you read them together, a part of a building is something that has some distinctness. It's an integral portion that's necessary for the whole. On that precise point, though, I wanted to call to your attention a case from the Eighth Circuit that was just from last month, so it's not in the briefs. And it addresses the issue. That was a case where they had part of a building, but they didn't also have the word entire in it. The particular case is Council Tower Association versus Access Specialty Insurance Company, 630 Federal 3rd, 725. That's out of the Eighth Circuit. It was a 27-story apartment building in St. Louis that had a brick facade on the first floor, 26 stories. And the brick facade was attached to the underlying concrete wall by anchor bolts that supported shelves on which the bricks sat. And then on one day, all of the bricks from the eighth story down fell. They were laying in a pile on the ground as a result of the hidden decay of the anchor bolts. What the court did was first analyze, well, is this a collapse of a part of a building? And the court concluded that it was not. The Eighth Circuit cited to this case, to the district court's opinion in its discussion of a part of a building, and it said that while the entire brick veneer is a part of the building, that a collapse of one-third of that part of the building was not a collapse of a part of a building. I think that's interesting because they didn't even have the word entire in there, yet it's stronger fast. There's something that actually fell to the ground, but it wasn't deemed sufficient. That case, Council Tower, is also interesting because it demonstrates the fundamental difference between just decay and decay which actually causes a collapse. I think that's the most fundamental problem, frankly, with this case is that all we have is structural decay, which admittedly is severe in some places. But no structural member has failed. Nothing has fallen down as a result of the structural decay. Plaintiffs' experts say that we don't even have a risk of imminent collapse. So in Council Tower, you had hidden structural decay. The anchor bolts failed, causing a part of the building, or the court said a portion of a part, to fall to the ground. That's one of the fundamental problems here. So our position is that there must be a complete collapse of a part of a building, and all we have is portions of structural members. We don't even need to go as far as saying that a wall is a part of a building. Let's concede that the structural member is a part of a building. We don't have a single one that can be identified where there's been a complete collapse. We just have small portions. And for perspective, we're talking about the gypsum sheathing and also wooden framing members. So plaintiffs, including the definition of collapse, a situation where you have one corner of a piece of gypsum sheathing that gets wet and dries out over a period of many years, eventually crumbles. As long as a small crumb falls off, plaintiffs calling that an entire collapse of a part of a building. And I believe that that first conflicts with the plain meaning of part of a building, and it also renders the word entire meaningless because the policy already requires an actual collapse. There's also the problem as to when it happens, right? Absolutely, Your Honor. And I was kind of looking at that. The first question is a question of policy interpretation. What is a collapse? Second question is, forget about the standard of collapse. Is there any evidence that a collapse has commenced during the policy period? And no, there is not. There's some expert testimony saying something may have happened, but as the court, District Court concluded, that was speculation. It should be pointed out that the effective policy period here is only seven months. This is because of the contractual limitation on suits, which wasn't addressed in the opening brief. The lawsuit had to be filed within two years of the loss, so we've got an effective policy period from June of 2006 through January 1st of 2007. And it's admitted that there's been decades of decay, and plaintiff's experts have said that this could have happened from day one. So I do think it's taking too long. Given that that's, you know, at least one way to read the record, the decay was ongoing, then you should logically conclude that some of that happened during the policy period, right? I think that some of it was on. At the very least, there was ongoing decay during the policy period. So the question is whether during the policy period that led to a collapse. Within the policy period, correct? Now, there's and all that all depends on the way I look at it. What entire means, right? An entire part, right? And to me, that's not a very unambiguous term, an entire part. I mean, that's I mean, that's the term is almost self contradictory, isn't it? Well, I can see the entire building, but the entire part. Well, you could have, for example, an entire wall fall down, you could have It doesn't say entire wall, it just says entire part. Sure. It doesn't even say entire part, but that's what it means, apparently, right? Yeah, it calls for a sudden entire collapse of a building or any part of a building. Any part of a building. And to me, that's awfully ambiguous. So opposing counsel says entire collapses is only means that it's not hanging by a thread that's actually fallen to the ground. Do you agree with that interpretation? No, because that is already required by the language defining collapse has actually fallen down or fallen into pieces. So that's already required. So all that language wasn't put in in response to the series of cases saying imminent collapse is enough or substantial impairment is enough for collapse. In the cases that discuss that are typically focusing on that part of the policy that defines collapse has actually fallen down or into pieces. They're not typically relying on the entire language. So what does the entire do? What's the difference between an entire collapse and a part collapse? Well, an entire collapse is going to Well, here, the Malco Holdings case, a floor truss failed, it broke, and the floor dropped three inches. That case did not require an entire collapse. There, I think, arguably, that's not an entire collapse because the floor dropped only three inches. You need the floor actually falling down to the ground or falling into pieces where separate pieces of the floor are laying on the floor below it. And that would be an entire collapse. I think the problems with trying to prove when this happened, as the court pointed out, is I think because we're applying the wrong collapse standard. State Farm's problem with respect to this case is in part, what collapses are we supposed to pay for? Plaintiff's theory is that there are many collapses around the condominiums, each with their own specific location and their specific commencement date. State Farm says, well, this has been going on for 20 years, point to one or show us which ones you claim commenced during the policy period. Perhaps there's coverage. Plaintiff has failed to do that even after a motion for summary judgment demanding that kind of evidence. Okay, thank you. Thank you. Thank you, Your Honor. If I may, let me address a quick point about the timing of the damages and the proof of the damages. And I'll point to the Malbco case, Your Honor. And in that case, this is one where I think I take Judge Tashima's point is that there is evidence in summary judgment record that these collapse damages, that there were fallen into pieces damages happening hidden behind the stucco each year, including the policy period year. And the Malbco case concludes, and that is 629 FSUP 1185, that the judge in that case found that there was an issue of summary judgment as to the timing of those damages because the resulting collapse could have occurred in the two to three month time span. That's always going to be the case in a case like this where we're talking about hidden decay damages. And there just won't be an eyewitness or, Judge Kuczynski, as you suggest, there won't be a specific point in time where you can point to, that's the day that the weight of snow or the weight of people caused the whole thing to fall in a heap. And I think it is important, Judge, to take a look at the history. Well, if you have an actual collapse that people can see, you will, in fact, have that. Pardon me? If a wall collapses, you will, in fact, have that. Even if the wall has been eaten away for years, there comes a point where the wall actually falls down. At that point, you will have a point in time. I agree with that, Your Honor. And in that case, that would at least serve as the point in time where the insured became aware of these damages. To address your question earlier about when Nastani and their board knew, once the wall falls down, they take a look and they say, well, there is, there's just rot behind that caused the wall to fall. And in this case, they didn't know about the rot until they look back behind there. And it isn't, as counsel suggests, an instance of one tiny piece falling down. But you have the burden of showing when this commenced, this is the, not just what's happening, but it actually commenced in the policy period. It didn't happen, didn't exist before. It happened during the policy period. And I don't see any proof at all that he did that as to anything. Your Honor, I respectfully disagree and suggest this, that the summary judgment evidence shows with the inferences favor of a non-movement that there was continuous damage systemically throughout the complex. And that's as, I think that's as good as the proof can get in these kinds of situations. But it has to commence. It has to commence during the policy period. So if it commenced before and continues for the policy period, it wouldn't count, right? And I think the district court correctly concluded that there are separate periods of commencing each year, each time there's an instance of fallen into pieces damages because of the wetting redrawing cycle that in that is a separate period of commencing. And it doesn't commence from the 1990s when this damage began. And as Judge Aiken pointed out in her opinion, there are provisions in insurance policies that exclude damages from the time any similar damages commence. That's not the kind of policy that State Farm wrote here. And so they are stuck with the language that they wrote, including to go back to the issue before, the sudden rather than using abrupt. Okay. Thank you.
judges: Kozinski, Tashima, Ikuta